RUSSELL W. ROTEN (SBN 170571)
J. ROBERT RENNER (SBN 148587)
MICHAEL W. WONG (SBN 243323)
Duane Morris LLP
633 West Fifth Street, Suite 4600
Los Angeles, CA 90071-2065
Telephone: 213.689.7400
Facsimile: 213.689.7401
E-Mail: rroten@duanemorris.com
E-Mail: rrenner@duanemorris.com
E-Mail: mwwong@duanemorris.com

Attorneys for Plaintiffs
CISCO-LINKSYS LLC, CISCO SYSTEMS, INC.
and CISCO SYSTEMS WIRELESS
NETWORKING (AUSTRALIA) PTY, LIMITED

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CISCO-LINKSYS LLC, CISCO SYSTEMS, INC. and CISCO SYSTEMS WIRELESS NETWORKING (AUSTRALIA) PTY, LTD.<br><br>Plaintiffs,<br><br>v.<br><br>COMMONWEALTH SCIENTIFIC INDUSTRIAL RESEARCH ORGANISATION,<br><br>Defendant. | Case No. SA CV09-0178-DOC(MLGx)<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF**<br><br><br>Judge David O. Carter<br>Courtroom 9-D |

Plaintiffs Cisco-Linksys, LLC ("Linksys"), Cisco Systems, Inc. ("Cisco") and Cisco Systems Wireless Networking (Australia) Pty Limited ("Cisco Australia") (collectively, "Plaintiffs"), for their amended complaint against Defendant Commonwealth Scientific and Industrial Research Organisation ("CSIRO"), respectfully show the Court as follows:

1.    On February 13, 2009, CSIRO filed a Notice of Removal removing this action from the Superior Court of the State of California, County of Orange. Defendants based removal on 28 U.S.C. §1441(d), which allows the removal of a case brought in a state court against a foreign state as defined by the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1603(a)-(b).  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c).

2.    CSIRO, on the one hand, and Linksys, Cisco and Cisco Australia, on the other hand, are in a dispute regarding Plaintiffs' rights under a 1998 Technology License Agreement ("TLA").  To resolve those disputes, Plaintiffs request that this Court declare the respective rights and duties of the parties under the TLA. Specifically, Plaintiffs seek declarations that: (a) Cisco is a party to the TLA, (b) that Cisco and/or Cisco Australia have the right to grant sublicenses under the TLA to Cisco affiliates referred to as "Cisco Group Companies" and including, at least, Linksys, (c) that Linksys is a sub-licensee under the TLA; (d) that the TLA licenses to Linksys, Cisco and Cisco Australia the right to develop, manufacture, use and/or sell products that exploit U.S. Patent No. 5,487,069 ("the '069 Patent"), among other licensed technology, and (e) that neither Cisco nor Cisco Australia have breached any enforceable obligation under the TLA.

**PARTIES**

3.    Linksys is a California limited liability company having its principal place of business at 121 Theory Drive, Irvine, CA 92617.  Linksys is a subsidiary of Cisco.

4.    Cisco is a California corporation having its principal place of business at West Tasman Drive in San Jose, California 95134.

5.    Cisco Australia is an Australian corporation having offices at Level 9, 80 Pacific Highway, North Sydney, NSW 2060, Australia.  Cisco Australia is a subsidiary of Cisco.

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

6.    CSIRO is a corporate entity established pursuant to the Science and Industry Research Act 1949 of the Commonwealth of Australia, and has a principal place of business at Limestone Ave., Campbell, ACT 2612, Australia.

## GENERAL ALLEGATIONS

### The Origin of the Parties' Relationship

7.    The relationship between Cisco Australia (formerly known as Radiata Communications PTY, Ltd.) and CSIRO dates back to late-1997 at which time Cisco Australia was formed by a then-current employee of CSIRO and two then-current employees of Macquarie University.

8.    In February 1998, Cisco Australia and CSIRO entered into the TLA, a technology license related to certain wireless LAN technology that was patented by CSIRO in the mid-1990s.

9.    In the TLA, CSIRO granted to Cisco Australia a license to use and exploit certain specifically defined technology. This technology includes certain technical know-how and CSIRO patents, including the '069 Patent.

10.    Soon after the formation of Cisco Australia, engineers at Cisco Australia began to work on a development project related to wireless radio chips for M/A-COM located in Boston, Massachusetts.

11.    In October of 1999, the Institute of Electrical and Electronics Engineers, Inc. ("IEEE") adopted the 802.11(a) wireless LAN standard that had been under discussion for several years. During the adoption process, CSIRO represented to the IEEE and currently claims that the '069 Patent is necessary to practice the 802.11a standard.

12.    After the adoption of the 802.11a wireless LAN standard, the engineers at Cisco Australia switched their focus and began to develop radio and modem chips that would be compliant with the new 802.11a wireless LAN standard.

13.    Around this same time, Cisco was in search of a developer of integrated circuits that could provide such circuits for use in Cisco's wireless products that would be IEEE 802.11(a) compliant.

14.    On or around September 21, 1999, Cisco made an initial investment in Cisco Australia and, in February of 2001, Cisco acquired all rights in Cisco Australia.

15.    Immediately after Cisco's acquisition of Cisco Australia, Cisco Australia was reorganized and its research and development efforts were coordinated with Cisco's research and development that was being conducted within Cisco's Wireless Networking Business Unit ("WNBU").

16.    On February 1, 2001, just a few days before Cisco's acquisition of Cisco Australia closed, CSIRO and Cisco Australia entered into an agreement to amend the TLA to: (i) reflect Cisco's pending acquisition of Cisco Australia, (ii) add a form agreement for the novation of the TLA to Cisco, and (iii) add a form sub-license pursuant to which Cisco or Cisco Australia could sub-license the TLA to other Cisco Group Companies. The February 1, 2001 amendment to the TLA is referred to herein as the "First TLA Amendment."

17.    Following Cisco's acquisition of Cisco Australia, Cisco with the apparent consent of CSIRO stepped into the shoes of Cisco Australia with respect to the TLA. In particular, Cisco performed Cisco Australia's obligations under the TLA including, among other things, the payment of royalties due to CSIRO under the TLA. CSIRO accepted these payments from Cisco and dealt directly with Cisco, rather than Cisco Australia, for all matters relating to the TLA. For example, as discussed below, CSIRO and Cisco entered into further amendments to the TLA.

**Cisco's Relationship with Marvell International, Ltd.**

18.    In or around mid-2002, Cisco and some of the ex-employees of Cisco Australia, who were then working on research and development for WNBU, completed the development of the IEEE 802.11(a) compliant integrated circuit that

-4-

1  Cisco Australia had started developing in 1999.  That integrated circuit came to be
2  known as the RM11a chip.

3      19.    The RM11a chip was the result of the collaborative development efforts
4  of the ex-Cisco Australia engineers and other Cisco engineers, many of whom had
5  joined Cisco as part of Cisco's earlier acquisition of a wireless LAN development
6  company called Aironet.

7      20.    In June 2002, Cisco entered into a License and Distribution Agreement
8  with Marvell International, Ltd. ("Marvell"), pursuant to which Marvell agreed to
9  manage the production and testing of the RM11a chip for Cisco ("Marvell LDA").

10     21.    On or around January 8, 2003, Cisco and Marvell amended the Marvell
11 LDA to clarify Marvell's rights with respect to the parties to whom Marvell could
12 sell the RM11a chip.

13     22.    In September 2003, Cisco and CSIRO amended the TLA to grant to
14 Cisco the right to sublicense its rights under the TLA to Marvell so that Marvell
15 could manage the manufacturing of the RM11a chip for Cisco.  The effective date of
16 this amendment was August 1, 2002 and is referred to herein as the "Second TLA
17 Amendment."  Cisco Australia was not a party to the Second TLA Amendment.

18 **Cisco's relationship with ST Microelectronics, Inc.**

19     23.    In and around 2003, Cisco was developing an integrated circuit known
20 as the "Richfield" chip.  The Richfield chip was intended to be compliant with the
21 IEEE 802.11 (g) standard.

22     24.    The Richfield chip was developed by Cisco engineers and it was
23 significantly different than the previously developed RM11a chip.

24     25.    In or around May 2003, Cisco entered into a License and Manufacturing
25 Services Agreement with ST Microelectronics, Inc. ("STMicro") for STMicro to
26 manage the production and testing of the Richfield chip, and its counterpart called the
27 Dubbo chip, for the benefit of Cisco and its related companies ("STMicro LMSA").

28

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

26.    The STMicro LMSA is similar to the Marvell LDA with respect to the rights granted to STMicro related to the manufacturing, sale and use of the Richfield chip.

**Cisco Acquires Linksys**

27.    In June 2003, Cisco completed its acquisition of The Linksys Group, Inc., now known as Cisco-Linksys LLC.

28.    As of June 2003, Linksys was among the Cisco Group of Companies, as that term was used in the First TLA Amendment.

29.    Linksys provides home networking products with a broad line of wired and wireless products for consumers and small office/home office users.    Among Linksys' current products are wireless LAN devices that are compliant with the IEEE 802.11(a), (g) and (draft-n) standards.

30.    Just before Cisco closed its acquisition of Linksys, CSIRO sent a licensing demand letter to Linksys addressed to Linksys' headquarters in Orange County in which it demanded that Linksys take a license to the '069 Patent.

31.    Following Cisco's acquisition of Linksys and Linksys' receipt of the CSIRO licensing demand, Cisco (on behalf of itself and its affiliated companies) and CSIRO commenced commercial negotiations regarding the TLA.

32.    Cisco's and CSIRO's commercial negotiations regarding the TLA continued through the filing of the Complaint and have included numerous in-person meetings attended by representatives of CSIRO and Cisco/Linksys/Cisco Australia at various locations in California.

**Cisco's Royalty Payments to CSIRO**

33.    Beginning in 2002, Cisco started making royalty payments to CSIRO under the TLA and CSIRO accepted those royalty payments directly from Cisco.

34.    According to the TLA, the royalty is to be calculated as a percentage of the price of a computer chip that: (a) exploits the '069 Patent or other know-how or patents    licensed    under    the    TLA    and    (b)    is    intended    for    incorporation    in

1  communications products manufactured or assembled by or with the authority of
2  Cisco or its sub-licensees.

3      35.  CSIRO claims that all indoor wireless LAN products that are compliant
4  with the IEEE 802.11(a), (g) and/or (draft-n) standards exploit the '069 Patent.

5      36.  Initially, Cisco paid CSIRO a royalty based on the cost of the RM11a
6  chips that Cisco used in its 802.11(a) compliant products.  At that time, the RM11a
7  chip was the only chip used by Cisco that was compliant with the IEEE 802.11(a), (g)
8  or draft (n) standards.

9      37.  Beginning in or around late 2004, Cisco started to sell products that
10 incorporated the Richfield chip.  Cisco subsequently paid CSIRO a royalty based on
11 the cost of the Richfield chips that Cisco used in its 802.11(g) compliant products as
12 well as the RM11a chips Cisco used in its 802.11(a) compliant products.  The
13 manufacturing of these chips was being managed for Cisco by Marvell and ST
14 Micro.

15     38.  In or around 2007, Cisco realized that it had miscalculated the royalties
16 due under the TLA.

17     39.  Cisco's miscalculations were based on three mistakes.  First, Cisco
18 determined that it was attributing the wrong cost to each RM11a and Richfield chip.
19 Second, Cisco mistakenly failed to pay royalties on its other chips that were used in
20 its IEEE 802.11(a), (g) and (draft-n) compliant products.  Third, Cisco mistakenly
21 failed to pay royalties on the chips that other Cisco Group Companies, such as
22 Linksys, used in their IEEE 802.11(a), (g) and (draft-n) compliant products.

23     40.  Thereafter, Cisco notified CSIRO that it had miscalculated the royalty
24 and that it believed that it should have paid a royalty on all of its IEEE 802.11(a), (g)
25 and (draft-n) compliant products because they were licensed under the TLA based on
26 CSIRO's claims that all IEEE 802.11(a), (g) and (draft-n) compliant products
27 exploited the '069 Patent.

28

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

41.    CSIRO disputed Cisco's contention that all of Cisco's 802.11(a), (g) and (draft-n) compliant products were licensed under the TLA.  According to CSIRO, the scope of the TLA was much narrower and only granted a license that would cover the RM11a and Richfield chips.  CSIRO also disputed the manner in which Cisco calculated the cost of the RM11a and Richfield chips.

42.    CSIRO has refused to provide any cognizable explanation as to why it contends the TLA only covers Cisco's RM11a and Richfield chips.

43.    On August 1, 2008 after an extensive and diligent analysis of its sales and product data, Cisco sent an updated royalty calculation to CSIRO that identified the royalty Cisco believed to be due for all of its IEEE 802.11(a), (g) and (draft-n) compliant products licensed under the TLA.

44.    In October of 2008, Cisco identified an error in its August 1, 2008 royalty calculation and identified for CSIRO the new amount Cisco believed it owed to CSIRO.  Then, in mid-October of 2008, Cisco made its royalty payment to CSIRO that included past due amounts for all IEEE 802.11(a), (g) and (draft-n) compliant products offered for sale by the Cisco Group Companies, including Cisco's subsidiary Linksys.

45.    Although CSIRO accepted Cisco's royalty payment, it disputed that the payment is correctly calculated under the TLA.

**CSIRO Purportedly Terminates the TLA**

46.    On December 10, 2007, CSIRO provided notice to Cisco Australia that CSIRO believed Cisco Australia was acting in breach of the TLA and that Cisco Australia's alleged breaches must be cured within 60 days.

47.    In particular, CSIRO claimed that Cisco Australia breached §§ 5, 5.3, 10.1 and 12.2 of the TLA.  Cisco Australia and Cisco responded to the notice by confirming to CSIRO that they did not believe they were in breach of the TLA.

48.    Thereafter, CSIRO, Cisco and Cisco Australia entered into a Standstill Agreement to facilitate further negotiations related to the parties' dispute.

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

49.    On October 24, 2008, CSIRO terminated the parties' Standstill Agreement and, on October 31, 2008, CSIRO provided a renewed notice to Cisco Australia of the alleged breaches that CSIRO claimed remained uncured.  Likewise, CSIRO provided notice to Cisco that CSIRO believed Cisco was acting in breach of §§ 5.1, 5.3, 9.2, 10.1 and 12.2 of the TLA and that Cisco's alleged breaches must be cured within 60 days.

50.    Thereafter, CSIRO, Cisco and Cisco Australia agreed that the time period to cure any and all breaches of the TLA would be extended through December 31, 2008.

51.    On December 31, 2008, Cisco Australia and Cisco reconfirmed to CSIRO that they had not materially breached the TLA, as contended by CSIRO.

52.    On January 2, 2009, CSIRO sent notice to Cisco and Cisco Australia that CSIRO was purportedly terminating the TLA.  CSIRO's notice did not provide a specific basis for terminating the TLA.

## FIRST CAUSE OF ACTION

### (Declaration that Cisco Is a Party to the TLA)

53.    Plaintiffs reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 54 of this Amended Complaint.

54.    According to the First TLA Amendment, CSIRO acknowledged that Cisco was acquiring Cisco Australia and CSIRO agreed to novate the TLA to a company within the Cisco Group of Companies.

55.    Following the First TLA Amendment, CSIRO gave apparent consent for Cisco to step into the shoes of Cisco Australia as a party under the TLA, as anticipated and permitted by the First TLA Amendment.

56.    CSIRO's consent to Cisco's assumption of Cisco Australia's rights and obligations under the TLA is evidenced by, among other things: (a) CSIRO's acceptance of royalty payments under the TLA directly from Cisco, rather than Cisco Australia, (b) the fact that Cisco and CSIRO, rather than Cisco Australia and CSIRO,

entered into the Second TLA Amendment, (c) CSIRO's representation in an amendment to the TLA that Cisco was a party to the TLA, (d) CSIRO's repeated representations in communications with Cisco that Cisco was a party to the TLA, (e) CSIRO's counsel's repeated representations in communications with Cisco that Cisco was a party to the TLA, and (f) CSIRO engaging Cisco, rather than Cisco Australia, in negotiations regarding issues arising out of and potential modification of the TLA beginning in or around 2003.

57.    This conduct reflects a mutual understanding that Cisco is a party to the TLA and is sufficient to convey to a reasonable person that CSIRO consented to Cisco's assumption of Cisco Australia's rights and obligations under the TLA.

58.    Nonetheless, CSIRO has disputed that Cisco is or ever has been a party to the TLA.

59.    On January 8, 2009, CSIRO commenced a lawsuit in Australia in which it alleges that "In or about September 2003, CSIRO, Cisco and [Cisco Australia] agreed to further amend the [TLA] whereby Cisco became a party to the [TLA] as amended with effect from 1 August 2002 but without identifying which rights and obligations under the [TLA] were conferred upon Cisco (the Second Amendment Agreement)." CSIRO's allegation in its Australia lawsuit is in conflict with its other recent statements that Cisco is not a party to the TLA.

60.    CSIRO should be estopped from asserting that Cisco is not a party to the TLA and/or that Cisco is not entitled to the full benefits of the TLA.

61.    Based on CSIRO's denials that Cisco is a party to the TLA and/or is entitled to the full benefits of the TLA, a valid case and controversy exists sufficient for this Court to declare the rights and remedies of the parties in that CSIRO's continued denial that Cisco is a party to the TLA with the full benefits flowing therefrom is harming and will continue to harm Cisco. CSIRO's denial that Cisco is a party to the TLA and is entitled to the full benefits of the TLA has caused and will continue to cause uncertainty for Cisco and Cisco Australia, with regard to, among

1  other things, Cisco's and Cisco Australia's obligations to pay royalties under the
2  TLA, their rights to grant sublicenses under the TLA and their respective on-going
3  licensing rights and duties under the TLA.

4      62.   By its statements and conduct, CSIRO has made clear its intention to
5  continue to dispute whether Cisco has certain rights under the TLA.

6      63.   Cisco and Cisco Australia have the requisite standing to request this
7  declaration in that one and/or the other has enforceable rights under the TLA, and
8  there is an actual, ripe, and live controversy between the parties.

9      64.   Cisco and Cisco Australia, therefore, seek a judgment from this Court
10  declaring that Cisco, and not Cisco Australia, currently is a party to the TLA.

11  **SECOND CAUSE OF ACTION**

12  **(Declaration that Cisco Is Entitled to Sublicense the TLA to any Cisco Group**
13  **Companies including, among others, Linksys and that Linksys is a Sub-licensee**
14  **under the TLA)**

15      65.   Plaintiffs reallege and incorporate by reference, as though fully set forth
16  herein, paragraphs 1 through 65 of this Amended Complaint.

17      66.   Among the rights conveyed under the TLA, as amended by the First
18  TLA Amendment, is the right to sublicense the TLA to any company in which Cisco
19  has a controlling shareholding or other controlling interest.   The First TLA
20  Amendment refers to such companies as "Cisco Group Companies."

21      67.   Linksys has been among the Cisco Group of Companies since it was
22  acquired by Cisco in 2003.

23      68.   According to the First TLA Amendment, Cisco (as the successor-in-
24  interest to Cisco Australia under the TLA) or Cisco Australia (if Cisco is determined
25  to not be a party to the TLA) is entitled to grant to any and all Cisco Group
26  Companies a sublicense under the TLA, pursuant to the terms of the form
27  Technology Sublicense to Cisco Group Company attached to the First TLA
28  Amendment ("Cisco Group Company Sublicense").

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

69.    The First TLA Amendment makes clear that CSIRO expressly consents to the grant of a sublicense to a Cisco Group Company according to the terms of the form Cisco Group Company Sublicense.

70.    As detailed above, Cisco is a party to the TLA and, therefore, is entitled to grant sublicenses to other Cisco Group Companies (including, among others, Linksys) according to the terms of the Cisco Group Company Sublicense.

71.    Cisco (or, in the alternative, Cisco Australia) has exercised its rights to convey to its subsidiary (or, in the alternative, sibling entity), Linksys, license rights pursuant to the terms of the Cisco Group Company Sublicense as evidenced by the payment of royalties to CSIRO for sales of Linksys products that are believed to be licensed under the TLA.

72.    Although CSIRO originally retained the payment of royalties for Linksys products, CSIRO continues to deny that Linksys is a proper sub-licensee under the TLA.  On February 1, 2009, CSIRO first expressed its intent to return a portion of the payment to Cisco.

73.    Based on CSIRO's denial of Cisco's or Cisco Australia's right to convey to Linksys the rights of a sub-licensee to the TLA, a valid case and controversy exists sufficient for this Court to declare the rights and remedies of the parties in that CSIRO's denial that any Cisco Group Company is entitled to the rights of a sub-licensee to the TLA is harming and will continue to harm Cisco, Cisco Australia and the other Cisco Group Companies.  CSIRO's refusal to recognize Linksys' rights as a sub-licensee to the TLA has caused and will continue to cause uncertainty for Linksys, Cisco, Cisco Australia and the other Cisco Group Companies, with regard to, among other things, the fulfillment of royalty obligations and other obligations under the TLA.

74.    By its statements and conduct, CSIRO has made clear its intention to continue to dispute whether Cisco and/or Cisco Australia have the right to grant sublicenses to the TLA to Cisco Group Companies including, among others, Linksys.

-12-

75.    Cisco and/or Cisco Australia and Linksys have the requisite standing to request this declaration in that Cisco and/or Cisco Australia and Linksys has enforceable rights under the TLA, and there is an actual, ripe, and live controversy between the parties.

76.    Cisco (or Cisco Australia in the alternative) and Linksys, therefore, seek a judgment from this Court declaring that Cisco, or Cisco Australia in the alternative, is entitled to convey to any and all Cisco Group Companies including, but not limited to, Linksys, sublicensing rights under the TLA in the form of the Cisco Group Company Sublicense and that Linksys, among other Cisco Group Companies, is a sublicensee under the TLA.

## THIRD CAUSE OF ACTION

### (Declaration that the TLA Grants the Right to Exploit the '069 Patent)

77.    Plaintiffs reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 77, inclusive, of this Amended Complaint.

78.    Among the rights granted under the TLA is the right to exploit the '069 Patent, among other technology.

79.    Section 3 of the TLA, as amended, defines the "Grant of License" under the TLA. According to § 3(a), "CSIRO grants the Licensee for the Application in the Territory a perpetual non-exclusive license to use, develop and exploit the Technology."

80.    When § 3(a) of the TLA, as amended, is read in connection with the incorporated definitions of "Application," "Territory," "Use," "Sale," "Products" and "Technology," the license granted is as follows:

CSIRO grants the Licensee for the [sic] to develop, manufacture, [sic] the sale (other than to a Cisco Group Company) of a communications product which incorporates a computer chip that exploits the circuit descriptions, HDL code and test suites for the modem chip design [or] CSIRO Patent 'A wireless LAN' contained in: [. . .] – USA Patent Number 5,487,069 [. . .] (including any derivative chips based on the circuit descriptions, HDL code and test suites for the modem chip design [or] CSIRO Patent 'A wireless LAN' contained in: [. . .] – USA Patent Number 5,487,069 [. . .] whether or not such chips

-13-

incorporate any Improvements) intended for incorporation in communications products manufactured or assembled by or with the authority of the Licensee or a sublicensee and it manufactured or assembled by or with the authority of a Cisco Group Company and/or transfer ownership or possession of that [sic] a computer chip that exploits the circuit descriptions, HDL code and test suites for the modem chip design [or] CSIRO Patent 'A wireless LAN' contained in: [. . .] – USA Patent Number 5,487,069 [. . .] (including any derivative chips based on the [specific CSIRO know-how and/or wireless LAN patents described in the schedule] whether or not such chips incorporate any Improvements) intended for incorporation in communications products manufactured or assembled by or with the authority of the Licensee or a sublicensee (whether separately or as a component part of another product) to a third person (other than a Cisco Group Company), including by sale, lease or license a computer chip that exploits the circuit descriptions, HDL code and test suites for the modem chip design [or] CSIRO Patent 'A wireless LAN' contained in: [. . .] – USA Patent Number 5,487,069 [. . .] (including any derivative chips based on the circuit descriptions, HDL code and test suites for the modem chip design [or] CSIRO Patent 'A wireless LAN' contained in: [. . .] – USA Patent Number 5,487,069 [. . .] whether or not such chips incorporate any Improvements) intended for incorporation in communications products manufactured or assembled by or with the authority of the Licensee or a sublicensee in anywhere in the world, a perpetual non-exclusive license to use, develop and exploit the circuit descriptions, HDL code and test suites for the modem chip design [or] CSIRO Patent 'A wireless LAN' contained in: [. . .] – USA Patent Number 5,487,069 [. . .].

81.     Smoothed out for the sake of readability, the license granted in § 3(a) is for the application of developing, manufacturing, using and/or selling a computer chip that exploits the specific CSIRO know-how and/or wireless LAN patents (including, among others, the '069 Patent) (including any derivative chips based on the know-how and/or patents whether or not such chips incorporate any improvements) and is intended for incorporation in communications products manufactured or assembled by or with the authority of the Licensee or a sublicensee in the Territory, a perpetual non-exclusive license to use, develop and exploit the specific CSIRO know-how and/or wireless LAN patents.

82.     In other words, § 3(a) grants the right to develop, manufacture, use and/or sell chips that exploit the '069 Patent as long as those chips are intended for incorporation in communications products manufactured or assembled by or with the authority of the Cisco Group Companies.

-14-

83.    Cisco and certain of the Cisco Group Companies including, but not limited to Linksys have paid to CSIRO a royalty under the TLA that has been calculated based on their sale of all chips that have been incorporated in communications products manufactured or assembled by or with the authority of the Cisco Group Companies that exploit the '069 Patent, as that patent has been construed by CSIRO, i.e., construed to cover all IEEE 802.11 (a), (g) and draft (n) compliant products.

84.    CSIRO disputes that the TLA grants the right to exploit the '069 Patent and, instead, claims that the TLA only licenses the '069 Patent to the extent that the '069 Patent is necessary to exploit the other "know-how" technology licensed under the TLA.

85.    CSIRO has not provided any legitimate justification for its unsupported interpretation of § 3(a) of the TLA.

86.    Based on CSIRO's denial that the TLA grants the right to exploit the '069 Patent, a valid case and controversy exists sufficient for this Court to declare the rights and remedies of the parties in that CSIRO's continued denial that TLA grants the right to exploit the '069 Patent is harming and will continue to harm Cisco, Linksys, Cisco Australia and the other Cisco Group Companies. Further, CSIRO's denial that TLA grants the right to exploit the '069 Patent has caused and will continue to cause uncertainty for Cisco and/or Cisco Australia and Linksys with regard to, among other things, the royalty obligations under the TLA.

87.    By its statements and conduct, CSIRO has made clear its intention to continue to dispute whether the TLA grants the right to exploit the '069 Patent.

88.    Cisco and/or Cisco Australia and Linksys have the requisite standing to request this declaration in that one and/or the other has enforceable rights under the TLA, and there is an actual, ripe, and live controversy between the parties.

89.    Cisco (or Cisco Australia in the alternative) and Linksys, therefore, seeks a judgment from this Court declaring that the TLA grants the right to exploit

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

1   the '069 Patent including, but not limited to, the right to develop, manufacture, use

2   and/or sell chips that exploit the '069 Patent as long as those chips are intended for

3   incorporation in communications products manufactured or assembled by or with the

4   authority of the Cisco Group Companies.

5   ### FOURTH CAUSE OF ACTION

6   **(Declaration that Plaintiffs Have Not Breached the TLA § 12.2 and that § 12.2 Is**

7   **Not Material and that CSIRO Is Estopped from Enforcing § 12.2)**

8       90.    Plaintiffs reallege and incorporate by reference, as though fully set forth

9   herein, paragraphs 1 through 90, inclusive, of this Amended Complaint.

10      91.    According to § 12.2 of the TLA, "the Licensee must include the relevant

11  CSIRO patent numbers on any products manufactured which were developed using

12  the Technology."

13      92.    Beginning in or around late 2002, Cisco began to offer for sale

14  communications products that utilized the RM11a chip and Cisco began to pay

15  royalties to CSIRO under the TLA.

16      93.    Between late 2002 and August 2004, Cisco did not identify any CSIRO

17  patent numbers on the RM11a chip or the communications products that utilized that

18  chip.

19      94.    Between late 2002 and August 2004, CSIRO did not demand that Cisco

20  identify any CSIRO patent numbers on the RM11a chip or the communications

21  products that utilized that chip.

22      95.    Then, in or around August of 2004, Cisco informed CSIRO that it had

23  not and would not identify any CSIRO patent numbers on communications products

24  offered for sale that were licensed under the TLA or any other patent license with

25  CSIRO.

26      96.    This fact was disclosed by Cisco to CSIRO in the context of discussions

27  regarding the scope of the TLA.

28

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

97.    In response, CSIRO accepted Cisco's position rather than demand that Cisco mark any products with any CSIRO patent number and did not provide notice to Cisco that its refusal to mark its products with any CSIRO patent number was in breach of § 12.2 of the TLA.

98.    For the next three years, CSIRO remained silent on the marking issues and gave no indication to Cisco that it believed Cisco was obligated to mark any of its products with any CSIRO patent number.

99.    Then, on or around July 26, 2007, CSIRO asked Cisco in the context of a dispute regarding the TLA whether Cisco was marking "Products for the purposes of sub-clause 12.2." In response, Cisco reminded CSIRO that it had not marked any CSIRO patent numbers on any chips or communication products, that Cisco had made this known to CSIRO in August of 2004 and that it had no obligation to mark any products because its products were not "developed using the Technology."

100.    Thereafter, on December 10, 2007, CSIRO claimed for the first time that Cisco Australia's failure to identify CSIRO's patent numbers on products offered for sale that were licensed under the TLA was a breach of § 12.2 of the TLA.

101.    CSIRO's December 10 claim that Cisco Australia was in breach of § 12.2 came more than five years after Cisco started selling communications products that utilized the RM11a chip and more than three years after Cisco informed CSIRO that it was not and did not intend to mark any communications products with any CSIRO patent numbers.

102.    On October 31, 2008, CSIRO also claimed that Cisco's failure to identify CSIRO's patent numbers on products offered for sale that were licensed under the TLA was a breach of § 12.2 of the TLA.

103.    During the entire time period between August 2004 and CSIRO's December 2007 (and later October 2008) notice to Cisco, CSIRO was aware that Cisco did not intend to mark any products with any CSIRO patent numbers. Also during that entire time period, CSIRO could have confirmed for itself that Cisco was

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

not marking any products with any CSIRO patent numbers by inspecting Cisco's products.

104.   Because CSIRO knowingly acquiesced to Cisco's refusal to mark for three years after learning that Cisco had not marked any product and because CSIRO remained knowingly silent during that time, CSIRO has waived any rights it may have had to insist on the performance of this obligation under § 12.2 and CSIRO's knowing acquiescence and waiver is not excused by § 19.5 of the TLA.

105.   Based on CSIRO's course of conduct, it should be estopped from enforcing § 12.2 of the TLA.

106.   Based on CSIRO's recent claims that Cisco and Cisco Australia have breached § 12.2 of the TLA, a valid case and controversy exists sufficient for this Court to declare the rights and remedies of the parties in that CSIRO's claims that § 12.2 has been breached is harming and will continue to harm Cisco and Cisco Australia.   CSIRO's allegations of breach have caused and will continue to cause uncertainty for Cisco, Cisco Australia and Linksys with regard to, among other things, their marking obligations under the TLA.

107.   By its statements and conduct, CSIRO has made clear its intention to continue to dispute whether Cisco and/or Cisco Australia are required to mark the '069 Patent number on wireless LAN communication products offered for sale by Cisco.

108.   Cisco, Cisco Australia and Linksys have the requisite standing to request this declaration in that one and/or the other has enforceable rights under the TLA, and there is an actual, ripe, and live controversy between the parties.

109.   Cisco, Cisco Australia and Linksys, therefore, seek a judgment from this Court declaring that they have not breached § 12.2 of the TLA because they have not developed any products using that Technology or, in the alternative, that § 12.2 is not a material provision to the TLA, as amended, does not provide a basis for CSIRO to

-18-

1    terminate the TLA, and that CSIRO is estopped from demanding compliance with §

2    12.2 of the TLA and no damages should therefore flow from such alleged breach.

3                              **FIFTH CAUSE OF ACTION**

4        **(Declaration that Plaintiffs Have Not Breached the TLA, § 10.1)**

5        110.    Plaintiffs reallege and incorporate by reference, as though fully set forth

6    herein, paragraphs 1 through 110 of this Amended Complaint.

7        111.    According to § 10.1(a) of the TLA, as amended, the Licensee must

8    "keep CSIRO informed of any improvements the Licensee or its Sublicensees or any

9    sub-sublicensees of those Sublicensees makes to the Technology ('Improvements')

10   and provide details reasonably requested by CSIRO."

11       112.    The term improvement is not substantively defined in the TLA.

12       113.    In or around July 2007, CSIRO requested that Cisco provide information

13   regarding the details of any "improvements."

14       114.    Thereafter, the parties met to discuss, among other things, whether any

15   improvements had been made by Cisco that needed to be disclosed to CSIRO.    It

16   became clear during those discussions that the parties were not in agreement

17   regarding the meaning of the term improvements as used in the TLA, as amended.

18       115.    CSIRO notified Cisco Australia on December 10, 2007, that it believed

19   Cisco Australia was in breach of § 10.1 for failing to identify improvements.

20       116.    Cisco has requested that CSIRO provide a copy of the Technology that

21   CSIRO claims has been improved upon by Cisco and/or Cisco Australia and CSIRO

22   has failed to provide any such copy or identify with any specificity the Technology

23   that it believes has been improved upon.

24       117.    Cisco, Cisco Australia and Linksys have not made any improvements

25   that need to be disclosed to CSIRO and, therefore, they have not breached § 10.1 of

26   the TLA.

27       118.    Based on CSIRO's recent claims that Cisco and Cisco Australia have

28   breached § 10.1 of the TLA, a valid case and controversy exists sufficient for this

-19-

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

Court to declare the rights and remedies of the parties in that CSIRO's claims that § 10.1 has been breached is harming and will continue to harm Cisco and Cisco Australia. CSIRO's allegations of breach have caused and will continue to cause uncertainty for Cisco, Cisco Australia and Linksys with regard to, among other things, their obligations to disclose to CSIRO details about improvements under the TLA.

119.  By its statements and conduct, CSIRO has made clear its intention to continue to dispute whether Cisco and/or Cisco Australia have made improvements that need to be disclosed under the TLA.

120.  Cisco, Cisco Australia and Linksys have the requisite standing to request this declaration in that one and/or the other has enforceable rights under the TLA, and there is an actual, ripe, and live controversy between the parties.

121.  Cisco, Cisco Australia and Linksys, therefore, seek a judgment from this Court declaring that they have not breached § 10.1 of the TLA by failing to disclose improvements to CSIRO or that if they have breached § 10.1, such breach is subject to being cured through timely disclosure following a judicial declaration of the meaning of the term "improvements" and, thereby, what Cisco technology may constitute an improvement.

### SIXTH CAUSE OF ACTION

**(Declaration that Cisco and Cisco Australia Have Not Breached the TLA, § 5.1 and that CSIRO Must Consent to a Sublicense to ST Micro on Similar Terms as the Second TLA Amendment)**

122.  Plaintiffs reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 123 of this Amended Complaint.

123.  According to § 5.1 of the TLA, "[t]he Licensee may grant sublicenses consistent with the terms of this Agreement but only if the Licensee first obtains CSIRO's written consent to the sublicense (which will not be unreasonably withheld)."

-20-

124.  Effective August 1, 2002, Cisco and CSIRO amended the TLA to allow Cisco to grant a sublicense to Marvell on the terms provided in the Second TLA Amendment.

125.  Cisco and CSIRO entered into the Second TLA Amendment to allow Marvell "to make, to have manufactured, to use, and to sell to a limited number of companies, including Cisco, commercial products containing the technology licensed to [Cisco Australia] and further enhanced by Cisco."

126.  Around that time, Marvell began to manage the manufacturing of the RM11a for Cisco and selling the RM11a to Cisco.

127.  The sublicense granted by Cisco to Marvell does not contain provisions that are inconsistent with the TLA, as amended.

128.  In 2004, STMicro began to provide similar services to Cisco related to the management of the manufacturing of the Richfield chip and the sale of the Richfield chip to Cisco.

129.  In or around the first quarter of 2005, Cisco began to make royalty payments to CSIRO related to the sale of communication products that included the Richfield chip provided to Cisco by STMicro.

130.  On December 10, 2007, CSIRO claimed that Cisco Australia breached § 5.1 of the TLA because it failed to obtain CSIRO's written consent to grant a sublicense to STMicro.

131.  Similarly, on October 31, 2008, CSIRO claimed that Cisco breached § 5.1 of the TLA because it failed to obtain CSIRO's written consent to grant a sublicense to STMicro.

132.  Also, CSIRO alleged for the first time in its January 8 Statement of Claim filed in its Australian lawsuit against Cisco and Cisco Australia that the sublicense that Cisco granted to Marvell is void because it "contains terms materially inconsistent with the terms of the [Second TLA Amendment]."

133.  Based on the fact that the sublicense that Cisco granted to Marvell does not contain terms materially inconsistent with the Second TLA Amendment, there is no reasonable basis for CSIRO to claim that the sublicense to Marvell is void or for CSIRO otherwise to withhold its consent to the sublicense granted to Marvell on terms consistent with the Second TLA Amendment.

134.  Also, based on CSIRO's acceptance of royalty payments related to the Richfield chip since the first quarter of 2005, and the fact that STMicro is providing to Cisco similar services that Marvell provides to Cisco, there is no reasonable basis for CSIRO to withhold its consent to the granting of a sublicense to STMicro on similar terms as the Second TLA Amendment.

135.  Nevertheless, CSIRO now claims the sublicense to Marvell is void and CSIRO has not consented to the granting of a sublicense to STMicro on similar terms as the Second TLA Amendment.

136.  Based on CSIRO's claims that Cisco and Cisco Australia have breached § 5.1 of the TLA and CSIRO's refusal to provide written consent to a sublicense to STMicro on similar terms as the Second TLA Amendment, a valid case and controversy exists sufficient for this Court to declare the rights and remedies of the parties in that CSIRO's claim that the Marvell sublicense is void and its withholding of consent is harming and will continue to harm Cisco and Cisco Australia. Furthermore, CSIRO's allegations of breach have caused and will continue to cause uncertainty for Cisco and Cisco Australia with regard to, among other things, their royalty obligations under the TLA.

137.  By its statements and conduct, CSIRO has made clear its intention to continue to dispute whether Cisco and/or Cisco Australia are entitled to grant and/or have granted sublicenses to Marvell and STMicro on terms similar to the Second TLA Amendment.

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

138.   Cisco and/or Cisco Australia have the requisite standing to request this declaration in that one and/or the other has enforceable rights under the TLA, and there is an actual, ripe, and live controversy between the parties.

139.   Cisco (or Cisco Australia in the alternative), therefore, seeks a judgment from this Court declaring that the sublicense to Marvell is not void and that CSIRO must provide written consent for Cisco to grant a sublicense to STMicro on similar terms to the terms set forth in the Second TLA Amendment so that Cisco (or Cisco Australia in the alternative) can timely cure any technical breach of § 5.1 of the TLA.

## SEVENTH CAUSE OF ACTION

### (Declaration that Plaintiffs Have Not Breached the TLA, § 5.3)

140.   Plaintiffs reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 140 of this Amended Complaint.

141.   According to § 5.3 of the TLA, "[t]he Licensee may only provide the Technology and any Improvements to a sublicensee in the form that will allow the sublicensee to manufacture integrated circuits but not redesign or make improvements to the Technology."

142.   On December 10, 2007, CSIRO claimed that Cisco Australia breached § 5.3 of the TLA because "Technology or Improvements have been provided by [Cisco Australia] directly or indirectly to its sub-licensees, namely Marvell and ST Microsystems, in a form that has allowed and will allow each of those sub-licensees to redesign or make improvements to the Technology."

143.   Similarly, on October 31, 2008, CSIRO claimed that Cisco breached § 5.3 of the TLA because "Technology or Improvements have been provided by [Cisco] directly or indirectly to its sub-licensees, namely Marvell and ST Microsystems, in a form that has allowed and will allow each of those sub-licensees to redesign or make improvements to the Technology."

144.   The meaning of § 5.3 is to protect and control the use of any CSIRO know-how that was provided to Cisco Australia pursuant to the TLA; not to limit

1  Cisco's, Cisco Australia's or Linksys' use or disclosure of its own wireless LAN

2  technology.

3      145.  CSIRO has refused to identify any know-how technology, including any

4  circuit descriptions, HDL code, or test suites for modem chip designs that it provided

5  to Cisco Australia pursuant to the TLA.

6      146.  Cisco, Cisco Australia and Linksys have not provided to Marvell and/or

7  STMicro any CSIRO know-how technology or improvements thereto in a form that

8  will allow Marvell and/or STMicro to redesign or make improvements to any know-

9  how technology of CSIRO.

10     147.  CSIRO has refused to explain or describe what Cisco and/or Cisco

11 Australia provided to Marvell and/or STMicro in violation of § 5.3 of the TLA.

12 Instead, CSIRO simply stands by its claim that Cisco and/or Cisco Australia

13 breached § 5.3 of the TLA.

14     148.  Based on CSIRO's claims that Cisco and Cisco Australia have breached

15 § 5.3 of the TLA, a valid case and controversy exists sufficient for this Court to

16 declare the rights and remedies of the parties in that CSIRO's allegations of breach of

17 § 5.3 and refusal to disclose the basis of its allegation have caused and will continue

18 to cause uncertainty for Cisco, Cisco Australia and Linksys with regard to, among

19 other things, their rights under the TLA and their duties with respect to their

20 sublicensees.

21     149.  By its statements and conduct, CSIRO has made clear its intention to

22 continue to dispute whether Cisco and/or Cisco Australia are in breach of § 5.3 of the

23 TLA.

24     150.  Cisco, Cisco Australia and Linksys have the requisite standing to request

25 this declaration in that one and/or the other has enforceable rights under the TLA, and

26 there is an actual, ripe, and live controversy between the parties.

27     151.  Cisco, Cisco Australia and Linksys, therefore, seek a judgment from this

28 Court declaring that they have not breached § 5.3 of the TLA because they have not

provided to Marvell or STMicro any technology or improvements in a form that would allow them to make improvements to any know-how technology provided by CSIRO to Cisco Australia.

## EIGHTH CAUSE OF ACTION

### (Declaration that Plaintiffs Have Not Breached any Enforceable Obligation under the TLA, § 9.2)

152.   Plaintiffs reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 152 of this Amended Complaint.

153.   According to § 9.2 of the TLA, the licensee under the TLA "must not take any action to challenge the validity of any IPR in Technology licensed under this Agreement."

154.   Cisco, Cisco Australia and Linksys have never initiated a lawsuit or other procedural challenge to the validity of any Technology under the TLA.

155.   The prohibition in § 9.2 and comparable provisions that CSIRO alleges should have been included in sublicenses of the TLA offend public policy by attempting to preserve from challenge a potentially invalid monopoly in the subject of the '069 Patent.

156.   Because § 9.2 and comparable provisions that CSIRO alleges should have been included in sublicenses of the TLA are contrary to public policy, they are unenforceable.

157.   Based on CSIRO's recent claims that Cisco has breached § 9.2 of the TLA and that Cisco's sublicenses are void because they do not contain a comparable provision, a valid case and controversy exists sufficient for this Court to declare the rights and remedies of the parties in that CSIRO's claims that § 9.2 has been breached is harming and will continue to harm Cisco and the Cisco Group Companies.  CSIRO's allegations of breach have caused and will continue to cause uncertainty for Cisco with regard to, among other things, its rights under the TLA.

158.  By its statements and conduct, CSIRO has made clear its intention to continue to dispute whether Cisco breached the TLA.

159.  Cisco, Cisco Australian and Linksys have the requisite standing to request this declaration in that it has enforceable rights under the TLA, and there is an actual, ripe, and live controversy between the parties.

160.  Cisco, Cisco Australia and Linksys, therefore, seeks a judgment from this Court declaring that Cisco has not breached § 9.2 of the TLA and that § 9.2 is unenforceable.

## NINTH CAUSE OF ACTION

### (Declaration that CSIRO Wrongfully Terminated the TLA)

161.  Plaintiffs reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 161 of this Amended Complaint.

162.  On January 2, 2009, CSIRO claims to have terminated the TLA.

163.  CSIRO has not provided a specific basis for its termination.

164.  There is no basis for CSIRO to have terminated the TLA.

165.  Based on CSIRO's claims that the TLA has been terminated, a valid case and controversy exists sufficient for this Court to declare the rights and remedies of the parties in that CSIRO's claim that the TLA is terminated is causing and will continue to cause uncertainty for Cisco, Linksys and Cisco Australia with regard to, among other things, their rights under the TLA and their duties with respect to their sublicensees.

166.  By its statements and conduct, CSIRO has made clear its intention to continue to claim that it properly terminated the TLA.

167.  Cisco and/or Cisco Australia and Linksys have the requisite standing to request this declaration in that Cisco and/or Cisco Australia and Linksys have enforceable rights under the TLA, and there is an actual, ripe, and live controversy between the parties.

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

168.  Cisco, Cisco Australia and Linksys, therefore, seek a judgment from this Court declaring that CSIRO had no basis to terminate the TLA and the TLA remains in full force and effect.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs Linksys, Cisco and Cisco Australia petition this Court and request that a judgment be entered and relief be granted as follows:

A.    Entering an Order declaring that:

1.  Cisco is a party to the TLA;

2.  Cisco (or Cisco Australia in the alternative) is entitled to convey to any and all Cisco Group Companies sublicensing rights under the TLA in the form of the Cisco Group Company Sublicense and that Linksys is a sub-licensee under the TLA;

3.  Linksys is entitled to avail itself of all enforceable rights and obligations under the TLA;

4.  the TLA grants the right to exploit the '069 Patent including, but not limited to, the right to develop, manufacture and, use and sell chips that exploit the '069 Patent as long as those chips are intended for incorporation in communications products manufactured or assembled by or with the authority of the Cisco Group Companies;

5.  Cisco, Cisco Australia and Linksys have not breached § 12.2 of the TLA because they have not developed any products using that Technology or, in the alternative, that § 12.2 is not a material provision to the TLA, as amended, and does not provide a basis for CSIRO to terminate the TLA and that CSIRO is estopped from demanding compliance with § 12.2 of the TLA and no damages should therefore flow from such alleged breach;

6.  Cisco, Cisco Australia and Linksys have not breached § 10.1 of the TLA by failing to disclose improvements to CSIRO or, if they have

-27-

1    breached § 10.1, such breach is subject to being cured through timely

2    disclosure following a judicial declaration of the meaning of the term

3    "improvements" and, thereby, what Cisco technology may constitute

4    an improvement;

5    7.  the sublicense to Marvell is not void because it does not contain

6    terms that are inconsistent with the Second TLA Amendment and

7    CSIRO must specifically perform its obligation to provide written

8    consent for Cisco or Cisco Australia to grant a sublicense to STMicro

9    on similar terms to the terms set forth in the Second TLA

10    Amendment so that Cisco can timely cure any technical breach of

11    § 5.1 of the TLA;

12    8.  Cisco, Cisco Australia and Linksys have not breached § 5.3 of the

13    TLA because they have not provided to Marvell or STMicro any

14    technology or improvements in a form that would allow them to

15    make improvements to any know-how technology provided by

16    CSIRO to Cisco Australia;

17    9.  Cisco, Cisco Australia and Linksys have not breached § 9.2 of the

18    TLA, and § 9.2 and comparable provisions that CSIRO alleges

19    should have been included in sublicenses of the TLA are

20    unenforceable; and

21    10.   CSIRO had no basis to terminate the TLA and the TLA remains

22    in full force and effect.

23    B.    Awarding to Plaintiffs their costs; and

24

25

26

27

28

-28-

C.    Awarding to Plaintiffs such other, further, or general relief as this Court may deem proper.

Dated:  February 20, 2009                    DUANE MORRIS LLP


By: _____
RUSSELL W. ROTEN
J. ROBERT RENNER
MICHAEL W. WONG
633 West Fifth Street, Suite 4600
Los Angeles, CA 90071-2065
Telephone: 213.689.7400
Facsimile: 213.689.7401
E-Mail: rroten@duanemorris.com
E-Mail: rrenner@duanemorris.com
E-Mail: mwwong@duanemorris.com

Attorneys for Plaintiffs
CISCO-LINKSYS LLC, CISCO SYSTEMS,
INC. and CISCO SYSTEMS WIRELESS
NETWORKING (AUSTRALIA) PTY, LTD

Of Counsel:

L. Norwood Jameson
Matthew S. Yungwirth
DUANE MORRIS LLP
1180 West Peachtree St., Suite 700
Atlanta, GA 30309
Telephone: 404.253.6900
Facsimile 404.2534.6901
E-Mail: wjameson@duanemorris.com
         msyungwirth@duanemorris.com

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF