JAMES M. WAGSTAFFE (95535)
wagstaffe@kerrwagstaffe.com
MICHAEL NG (237915)
mng@kerrwagstaffe.com
**KERR & WAGSTAFFE LLP**
100 Spear Street, Suite 1800
San Francisco, CA 94105–1528
Telephone: (415) 371-8500
Fax: (415) 371-0500

Attorneys for Defendant
COMMONWEALTH SCIENTIFIC AND
INDUSTRIAL RESEARCH
ORGANISATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| CISCO-LINKSYS LLC, CISCO SYSTEMS, INC. AND CISCO SYSTEMS WIRELESS NETWORKING (AUSTRALIA) PTY, LTD.<br><br>        Plaintiffs,<br><br>    v.<br><br>COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,<br><br>        Defendant. | Case No. SACV0900178-DOC(MLG)<br><br>**DECLARATION OF MICHAEL PRYSE IN SUPPORT OF DEFENDANT CSIRO'S MOTION TO DISMISS**<br><br>DATE:  August 10, 2009<br>TIME:  8:30 a.m.<br>COURTROOM:  9D<br><br>TRIAL:  [None]<br><br>**Hon. David O. Carter** |

KERR
&
WAGSTAFFE
LLP

I, Michael Keith Hamilton Pryse, declare as follows:

1.    I am a partner in Freehills, an Australian law firm which are the lawyers for Commonwealth Scientific and Industrial Research Organisation ("CSIRO") in its litigation with Cisco Systems, Inc. ("Cisco") and Cisco Systems Wireless Networking (Australia) Pty Limited (formerly known as Radiata Communications Pty Ltd, or "Radiata") in the Supreme Court of New South Wales, Australia (Case No. 20007/09, the "Australian action"). I have the care and conduct of that action on behalf of CSIRO.

2.    I make this declaration of my own personal knowledge, except where otherwise noted.

3.    I have practiced commercial litigation for approximately 27 years, principally in Australia but including twelve months in London. I hold a Bachelor of Laws (Honours) and Bachelor of Commerce, both obtained from the University of Melbourne in 1980.

4.    Following lengthy attempts to settle or minimize the issues in dispute between them, on October 24, 2008 CSIRO informed Radiata and Cisco of its intent to terminate the Technology Licence Agreement ("TLA") between those parties, in accordance with clauses 16 and 17 of that agreement, if Cisco did not cure its breaches within the contractually specified period.

5.    Cisco subsequently asked CSIRO to extend the cure period to December 31, 2008, to which CSIRO agreed. Before that deadline was reached, however, Cisco filed this suit on Christmas Eve, December 24, 2008. CSIRO sent notice of termination of the TLA to Cisco on the next CSIRO working day after the extended cure period had elapsed. Cisco amended its complaint to reflect that termination.

6.    CSIRO filed the Australian action on January 8, 2009, a few days after the termination became effective. The suit was filed in Supreme Court of New South Wales, the Australian state whose law governs the TLA and all of its

amendments.  Attached hereto is a copy of the Statement of Claim in the Australian action, which is the initial pleading in that case.

7.    CSIRO, Cisco and Radiata are all parties to that litigation.  As Cisco does in this action, CSIRO seeks a declaratory judgment in the Australian action concerning the rights of the parties under the agreement and the validity of CSIRO's termination.  The issues between CSIRO, Cisco and Radiata in both cases overlap, and in most instances are substantively identical.  The non-overlapping claims present in this case but not in the Australian action could be added to the Australian action.  The procedures of the New South Wales Supreme Court would also permit a Cisco-Linksys LLC, a party in these proceedings but not the Australian action, to apply to become a party in the Australian action to assert the claims it does here or to commence another action and apply to have it heard together, or consolidated, with the Australian action.

8.    By agreement of the parties, service was made in both cases effective the same date, January 19, 2009.  Cisco and Radiata have both unconditionally appeared in the Australian action, thus consenting to jurisdiction.  CSIRO, which is obviously subject to the court's jurisdiction as plaintiff, is also generally subject to service in Australia and the jurisdiction of the Australian courts.  The Australian action, like this one, has been the subject of two standstill agreements between the parties, pursuant to which pending deadlines were extended to July 15, 2009.

9.    The Supreme Court of New South Wales has jurisdiction to issue a declaratory judgment binding the parties to the Australian action regarding all of the issues before that court.

10.    Parties to litigation in the Supreme Court of New South Wales are subject to discovery rules that require broad exchange of relevant information and evidence.  Each party must give discovery of documents in relation to matters in issue in the proceeding it its possession, custody or power.  Relevance is usually assessed by reference to agreed categories of documents which are inevitably

1  derived from matters in issue as revealed by the pleadings.   Those categories may
2  be defined by the agreement of the parties or an order from the court.  The
3  obligation is not only to produce documents that a party intends to rely on, but also
4  documents that may harm a party's case.  "Documents" for the purpose of
5  discovery is broad enough to include some physical evidence.

6       11.   A party's obligation to produce documents and other things extends to
7  all documents and things in their custody, possession or power, regardless of where
8  the documents or things are physically located.  Parties are thus required to
9  produce documents within their possession but located in foreign countries.
10  Confidential documents are often produced pursuant to terms of an agreed or
11  otherwise ordered confidentiality regime, for example, limiting disclosure to
12  external solicitors and counsel and limited persons within the parties, each of
13  whom may be required to execute confidentiality undertakings.  Documents
14  produced under compulsion in Australian legal proceedings are subject to an
15  implied undertaking to the court that they are not be used for any purpose other
16  than that litigation.

17       12.   Parties are also obliged to produce their relevant witnesses for trial.
18  Though depositions are not used in Australian legal proceedings, non-parties may
19  be compelled to appear at trial or earlier hearings by way of subpoena.
20  Documentary and other physical evidence may also be obtained from non-parties
21  by means of a subpoena or non-party discovery.  Documents and other evidence
22  obtained from non-parties may also be subject to orders protecting confidential
23  information.

24       13.   I have been informed that one of the factors at issue in this motion is
25  how difficult it will be for the parties to the United States case to obtain discovery
26  from non-parties who are located in Australia in connection with that litigation.
27  Through my experience as a commercial litigator, I am familiar with that process,
28  and describe it briefly below.

KERR
&
WAGSTAFFE
LLP

14.    Though production from Australian entities holding discoverable documents may be compelled in connection with United States litigation, the process is relatively cumbersome.  Australia is a party to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters.  To obtain deposition testimony or production of evidence under the Convention's process, a litigant in an American action must obtain a letter of request from a United States court seeking judicial assistance from the relevant authority in Australia, either the Secretary to the Attorney-General's Department or the registrar of the relevant state or territory Supreme Court.  Australian counsel must then make an application to the Supreme Court for an order that evidence be obtained in that state, and the application must be supported by an affidavit.  The Australian court may then issue a subpoena compelling attendance and production, but may issue directions and limitations concerning issues like admissibility and privilege.  If the witness fails to attend the examination or refuses to answer lawful questions or produce any documents or things, a party can request that the examiner provide a certificate of failure or refusal, and upon filing that certificate the court can order the witness to answer the questions or produce the documents.  Though the practice varies in different state courts, and differences in the way the letter of request from the requesting court may create additional complications, even a straightforward request usually takes at least two months.

15.    In contrast, the pretrial practice in Australian litigation makes discovery, including discovery from non-parties, a straightforward process for entities or individuals located in Australia.   Having examined the issues in this case, I am aware that most of the relevant witnesses, including both those affiliated with one of the parties and non-party witnesses, are Australians and reside in Australia.  I therefore believe that litigation in Australia will be much less burdensome for both sides, facilitating a speedy resolution of the relevant legal and factual issues under New South Wales law.

16.     Based on my experience of practice as a commercial litigator, and having regard to the current pleadings and what I understand to be the defendants' case, I expect that document discovery in the Australian action will last approximately four to six months, with an additional four months for written witness statements and two to three months for expert discovery.  I expect that trial would be able to be commenced another three months after that (subject to the court's other commitments at the time), and last approximately four weeks.

I declare under penalty of perjury that the foregoing is true and correct and was executed on this 15th day of July, 2009, at _____, Australia.

_____

Michael Keith Hamilton Pryse

DAMIAN MICHAEL TARULLI
Freehills
101 Collins Street Melbourne
An Australian Legal Practitioner within the
meaning of the Legal Profession Act 2004

KERR
&
WAGSTAFFE
LLP

EXHIBIT A

Form 3A (version 1)
UCPR 6.2

## STATEMENT OF CLAIM

### COURT DETAILS

| | |
|---|---|
| Court | Supreme Court |
| Division | Common Law |
| List | General |
| Registry | Sydney |
| Case number | 2000 7 /09 |

### TITLE OF PROCEEDINGS

| | |
|---|---|
| Plaintiff | **Commonwealth Scientific and Industrial Research Organisation** |
| First Defendant | **Cisco Systems Wireless Networking (Australia) Pty Limited (formerly known as Radiata Communications Pty Ltd)** |
| Second defendant | **Cisco Systems, Inc.** |

### FILING DETAILS

| | |
|---|---|
| Filed for | **Commonwealth Scientific and Industrial Research Organisation** |
| Legal representative | Freehills |
| Legal representative reference | MKP:ADCE:81279524 |
| Contact name and telephone | Andrew Eastwood (02) 9225 5441 |

### TYPE OF CLAIM

Mercantile Law – Other

*This is the attachment to the declaration of Michael Pryse made 15 July 2009*

2

## RELIEF CLAIMED

A.  A declaration that the TL Agreement (as amended) was validly terminated by CSIRO on 2 January 2009.

B.  Delivery up to CSIRO's solicitors of any Improvements made by Radiata, Cisco or any sub-licensee to the Technology.

C.  Delivery up to CSIRO's solicitors of all CSIRO Confidential Information in the possession of Radiata, Cisco or any sub-licensee.

D.  An order that all sub-licences granted by Radiata or Cisco under the TL Agreement (as amended) be assigned forthwith to CSIRO.

E.  An order that all intellectual property rights in any improvements to the Technology be assigned forthwith to CSIRO.

F.  An order that Radiata and Cisco execute all such documents as required to give effect to paragraphs D and E above.

G.  Damages for breach of the TL Agreement (as amended).

H.  Damages for breach of the Second Amendment Agreement.

I.  Any enquiry as to damages as may be necessary.

J.  Costs.

K.  Interest.

L.  Such further or other order as the Court deems appropriate.

## PLEADINGS AND PARTICULARS

1  The Plaintiff (CSIRO) is, and has been at all material times:

    (a)  a body corporate established under the Science and Industry Research Act 1949 (Cth); and

    (b)  entitled to sue in its corporate name.

2  The First Defendant (Radiata) is, and has been at all material times:

    (a)  registered pursuant to the Corporations Act 2001; and

    (b)  capable of being sued in its corporate name.

3  Since late 2000 or early 2001, Radiata has been a wholly owned subsidiary of the Second Defendant.

3

4    The Second Defendant (Cisco) is, and has been at all material times:

    (a)    a company incorporated in the State of California in the United States of America; and

    (b)    capable of being sued in its corporate name.

5    On 23 February 1998, CSIRO and Radiata entered into an agreement whereby CSIRO agreed to licence certain Technology to Radiata (the TL Agreement).

## PARTICULARS

    (a)    The terms of the TL Agreement are partly in writing and partly to be implied. Insofar as they are in writing, they are set out in the Technology Licence Agreement executed on 23 February 1998 and signed by W D King on behalf of CSIRO in his capacity as Acting Chief, CSIRO Telecommunications & Industrial Physics and N Weste and D Skellern in their respective capacities as secretary and director of Radiata.

        A copy of the said Technology Licence Agreement (including Annexure A) is available for inspection at the offices of CSIRO's solicitors during business hours by prior appointment.

    (b)    Insofar as the terms of the TL Agreement are to be implied, they are to be implied from:

        (i)    the operation of law; and

        (ii)    the need to give business efficacy to the agreement.

6    On 1 February 2001, CSIRO and Radiata agreed to amend the TL Agreement (the First Amendment Agreement).

## PARTICULARS

The First Amendment Agreement was in writing and was set out in a letter dated 1 February 2001 from W King on behalf of CSIRO to the directors of Radiata and accepted on behalf of Radiata by Chris Beare.

A copy of the First Amendment Agreement is available for inspection at the offices of CSIRO's solicitors during business hours by prior appointment.

7    In or about September 2003, CSIRO, Cisco and Radiata agreed to further amend the TL Agreement whereby Cisco became a party to the TL Agreement as amended with effect from 1 August 2002 but without identifying which rights and obligations

4

under the TL Agreement were conferred upon Cisco (the Second Amendment Agreement).

## PARTICULARS

The Second Amendment Agreement was in writing and set out in the amendment to Technology Licence Agreement signed by W Rossi on behalf of Cisco on 29 August 2003, and D Redfern on behalf of CSIRO on 12 September 2003

A copy of the Second Amendment Agreement is available for inspection at the offices of CSIRO's solicitors during business hours by prior appointment.

8    There were terms of the TL Agreement (as amended by the First Amendment Agreement and the Second Amendment Agreement), inter alia, that:

(a)    CSIRO would grant to each of Radiata and/or Cisco a perpetual non-exclusive licence to use, develop and exploit the Technology (clause 3(a)).

(b)    Radiata and/or Cisco must include the relevant CSIRO patent numbers on any products manufactured by them, or caused by them to be manufactured, which were developed using the Technology (clause 12.2).

(c)    Radiata and/or Cisco may grant sub-licences consistent with the terms of the TL Agreement (as amended) but only if Radiata and/or Cisco first obtained CSIRO's written consent to the sub-licence (clause 5.1).

(d)    Any sub-licence granted by Radiata and/or Cisco under the TL Agreement (as amended) must be in the form of Annexure A attached to the TL Agreement (as amended) (clause 5.2(a)).

(e)    Radiata and/or Cisco may only provide the Technology and any Improvements to a sub-licensee in the form that will allow the sub-licensee to manufacture integrated circuits but not redesign or make improvements to the Technology (clause 5.3).

(f)    Radiata and/or Cisco must not take any action to challenge the validity of any of CSIRO's intellectual property rights in the Technology licensed under the TL Agreement (as amended) (clause 9.2(a)).

(g)    Radiata and/or Cisco must keep CSIRO informed of any improvements they or their sub-licensees makes to the Technology (clause 10.1(a)).

(h)    CSIRO may terminate the TL Agreement (as amended) with immediate effect by giving notice to Radiata and/or Cisco if Radiata and/or Cisco

5

breaches any provision of the TL Agreement (as amended) and fails to remedy the breach within 60 days after receiving notice requiring it to do so (clause 16.2(a)).

(i) CSIRO may terminate the TL Agreement (as amended) with immediate effect by giving notice to Radiata and/or Cisco if Radiata and/or Cisco breaches a material provision of the TL Agreement (as amended)(clause 16.2(b)).

**Failure to mark**

9  Since 23 February 1998, in breach of clause 12.2 of the TL Agreement (as amended), each of Radiata and Cisco has failed to include the relevant US patent number (US 5,487,069) on any products manufactured by them or on their behalf, which were developed using the Technology.

## PARTICULARS

(a) Since at least late 2002, Radiata and/or Cisco has manufactured or authorised to be manufactured and sold chips with parameters other than those contained in the Standard Chips (Derivative Chips).

(b) The Derivative Chips were developed by Radiata and/or Cisco, or on its or their behalf, using the Technology.

(c) The Derivative Chips include:

(i) the chips known as:

(1) RM11a; and

(2) Richfield;

(ii) the chips manufactured under sub-licence from Radiata and/or Cisco by:

(1) Marvell; and

(2) ST Microsystems.

(d) Derivative Chips have been incorporated in communications products manufactured or assembled by or with the authority of Radiata and/or Cisco and/or any sublicensee of Radiata and/or Cisco and sold in the United States.

6

(e)     None of the Derivative Chips developed and manufactured by Radiata and/or Cisco or developed and manufactured on their behalf are marked with US patent No. US 5,487,069.

(f)     None of the communications products manufactured or assembled by or with the authority of Radiata and/or Cisco and/or any sublicensee of Radiata and/or Cisco in which the Derivative Chips were incorporated are marked with US patent No. US 5,487,069.

**Grant of sub-licences without consent**

10     On or about June 2002, Cisco purported to grant a sub-licence under the TL Agreement (as amended by the First Amendment Agreement) to Marvell without obtaining CSIRO's prior written consent to such sub-licence.

**PARTICULARS**

(a)     In a letter dated 10 September 2008 from Steve Quan of Marvell to Denis Redfern of CSIRO, Marvell refers to a "June 2002 Licence and Distribution Agreement between Cisco and Marvell". A copy of this letter is in the possession of CSIRO's solicitors and is available for inspection during business hours by prior appointment.

(b)     By virtue of the Second Amendment Agreement, CSIRO consented to the Marvell Sublicence on the written warrant of Cisco that the terms of the Marvell Sublicence contains no terms materially inconsistent with the terms of Annexure A to the TL Agreement (as amended).

(c)     Marvell has manufactured a substantial volume of Derivative Chips under the sub-licence from Cisco.

11     Despite requests for its production, Radiata and Cisco have refused to provide CSIRO with a copy of the sub-licence granted to Marvell.

**PARTICULARS**

(a)     On 27 October 2006 CSIRO's US lawyers requested in writing that Cisco provide CSIRO with "copies of the Cisco-Marvell and Cisco-ST agreements".

(b)     On 26 July 2007 Denis Redfern of CSIRO requested in writing that Cisco provide "details of all entities that Cisco believes are sublicensed under clause 5 of the [TL Agreement] to manufacture integrated circuits".

7

(c)   On 3 August 2007 Cisco replied in writing to CSIRO's letter of 26 July 2007 that "we believe we will be in a position to provide you with additional information at our next meeting".

(d)   On 13 August 2007 Denis Redfern of CSIRO requested in writing that Cisco provide copies of all the information previously requested prior to the scheduled meeting.

(e)   On 5 November 2007 CSIRO's US lawyers requested in writing that Cisco provide CSIRO with "identification of and copies of agreements as to all entities sub-licensed under the TLA to manufacture integrated circuits for Cisco or others".

(f)   On 30 November 2007 CSIRO's US lawyers wrote to Cisco noting that Cisco had failed to provide to CSIRO copies of the sublicenses and stated "we are entitled to the documents previously requested and which are summarised in my 5 November letter. To date they have not been provided to us".

(g)   On 3 December 2007 Cisco's US lawyers wrote to CSIRO refusing to provide CSIRO with a copy of the sub-licence.

Copies of these letters are available for inspection at the offices of CSIRO's solicitors during business hours by prior appointment.

12    By clause 8.2(a) of Annexure A to the TL Agreement (as amended), the Sublicensee must not take any action to challenge the validity of IPR in Technology.

13    Since at least 29 April 2005, Marvell has been a party to a joint defence agreement in relation to proceedings in the United States in which the validity of US patent 5,487,069, of which CSIRO is the registered owner (the CSIRO's US Patent), is challenged.

PARTICULARS

(a)   The defendants in US proceedings in the Federal Court of the Eastern District of Texas 6:06-cv-549, 6:06-cv-550, 6:06-cv-551 and 6:07-cv-204, allege that CSIRO's US Patent is invalid and seek orders that the patent be revoked.

(b)   A privilege log in US proceeding CGC-07-461589 of the Superior Court of the State of California, County of San Francisco indicates that on 29 April 2005, an email was sent to members of the Joint Defence Group in relation to that US proceeding. Listed recipients to the Joint Defence Group email

8

include a Marvell employee. The same employee also received two more emails on 2 May 2005.

(c)     A privilege log in US proceeding CGC-07-461589 of the Superior Court of the State of California, County of San Francisco indicates that on 2 May 2005, an email was sent to members of the Joint Defence Group in relation to that US proceeding. Listed recipients to the Joint Defence Group email include another Marvell employee.

(d)     On or about 4 May 2007 Marvell filed a complaint against CSIRO in the United States District Court for the Eastern District of Texas (Civil Action No. 6:07-cv-204) in which Marvell sought, inter alia, declaratory relief that the CSIRO's US Patent, is invalid.

14      The inference to be drawn from the matters set out in paragraphs 12 and 13 above, is that, in breach of clause 5.2 of the TL Agreement (as amended), there is no equivalent clause to clause 8.2(a) of Annexure A to the TL Agreement (as amended) in the sublicence granted by Cisco to Marvell.

15      On or about May 2003, Radiata and/or Cisco purported to grant a sub-licence under the TL Agreement (as amended) to ST Microsystems without obtaining CSIRO's prior written consent to such sub-licence.

**PARTICULARS**

(a)     ST Microsystems has manufactured a substantial volume of Derivative Chips under the sub-licence from Cisco.

16      Despite requests for its production, Cisco has refused to provide CSIRO with a copy of the sub-licence it granted to ST Microsystems.

**PARTICULARS**

(b)     On 28 March 2006 CSIRO's US lawyers requested in writing that Cisco provide CSIRO with "additional information with regard to [the] circumstances" of manufacture of the Richfield chips.

(c)     On 18 July 2006 CSIRO's US lawyers requested in writing that Cisco provide CSIRO with "copies of the appropriate documentation and any additional appropriate information" concerning ST Microsystems' apparent manufacture of the Richfield chips.

9

(d)     On 27 October 2006 CSIRO's US lawyers requested in writing that Cisco provide CSIRO with "copies of the Cisco-Marvell and Cisco-ST agreements".

(e)     On 26 July 2007 Denis Redfern of CSIRO requested in writing that Cisco provide "details of all entities that Cisco believes are sublicensed under clause 5 of the [TL Agreement] to manufacture integrated circuits".

(f)     On 3 August 2007 Cisco replied in writing to CSIRO's letter of 26 July 2007 that "we believe we will be in a position to provide you with additional information at our next meeting".

(g)     On 13 August 2007 Denis Redfern of CSIRO requested in writing that Cisco provide copies of all the information previously requested prior to the scheduled meeting.

(h)     On 5 November 2007 CSIRO's US lawyers requested in writing that Cisco provide CSIRO with "identification of and copies of agreements as to all entities sub-licensed under the TLA to manufacture integrated circuits for Cisco or others".

(i)     On 30 November 2007 CSIRO's US lawyers wrote to Cisco noting that Cisco had failed to provide to CSIRO copies of the sublicenses and stated "we are entitled to the documents previously requested and which are summarised in my 5 November letter. To date they have not been provided to us".

(j)     On 3 December 2007 Cisco's US lawyers wrote to CSIRO refusing to provide CSIRO with a copy of the sub-licence.

Copies of these letters are available for inspection at the offices of CSIRO's solicitors during business hours by prior appointment.

17     The inference to be drawn from the matters set out in paragraphs 10 to 16 (both inclusive) above, is that, in breach of clause 5 of the TL Agreement (as amended):

(a)     the sub-licence purportedly granted to Marvell contains terms materially inconsistent with the terms of Annexure A to the TL Agreement (as amended); and

(b)     the sub-licence purportedly granted to ST Microsystems is not in the form of Annexure A to the TL Agreement (as amended).

10

18      By reason of the matters set out in paragraphs 10 to 17, above, Radiata and/or
        Cisco have breached clauses 5.1 and 5.2 of the TL Agreement (as amended).

**Breach of the Second Amendment Agreement**

19      By clause 2 of the Second Amendment Agreement, CSIRO granted to Cisco the
        right to sublicence Marvell under the TL Agreement (as amended).

20      By clause 3 of the Second Amendment Agreement, Cisco warranted that its
        agreement with Marvell contains no terms materially inconsistent with Annexure A to
        the TL Agreement (as amended).

21      If, as inferred, the sub-licence purportedly granted to Marvell contains terms
        materially inconsistent with the terms of Annexure A, clause 3 of the Second
        Amendment Agreement contained a misrepresentation by Cisco and CSIRO's grant
        to Cisco of the right to sublicence Marvell by way of the Second Amendment
        Agreement is void and of no effect.

22      By reason of the matters set out in paragraphs 10 to 14 and 19, 20 and 21 above,
        Radiata and/or Cisco have breached clause 3 of the Second Amendment
        Agreement.

**Failure to notify Improvements**

23      Since August 2002, Radiata and/or Cisco and/or its or their sub-licensees have
        made improvements to the Technology.

                                    **PARTICULARS**

        (a)     Since August 2002, Cisco has developed and manufactured, or its sub-
                licensees have developed and manufactured, Derivative Chips including
                chips known as:

                (i)      RM11a; and

                (ii)     Richfield.

        (b)     Each of the Derivative Chips developed and manufactured by Cisco and/or
                its sub-licensees incorporate improvements to the Technology.

24      Neither Radiata nor Cisco has informed CSIRO of any improvements made to the
        Technology by it or them or by its or their sub-licensees.

25      By reason of the matters set out in paragraphs 23 and 24 above, Radiata and/or
        Cisco has breached clauses 10.1 and 10.2 of the TL Agreement (as amended).

11

**Provision of Technology to sublicensees**

26      Since around late 2002, in breach of clause 5.3 of the TL Agreement (as amended), Radiata and/or Cisco have provided the Technology to sub-licensees in a form that enabled the sub-licensees to make improvements to the Technology.

PARTICULARS

(a)      Radiata and/or Cisco have purportedly granted a sub-licence of the TL Agreement (as amended) to:

(i)      Marvell; and

(ii)      ST Microsystems

(b)      Since late 2002, each of the sub-licensees have made improvements to the Technology by undertaking yield improvement work to decrease the size of the chips manufactured by them pursuant to the sub-licence granted by Cisco.

**Challenge to IPR**

27      Since at least 2 May 2005, in breach of clause 9.2 of the TL Agreement (as amended), Cisco has been a party to a joint defence agreement in relation to, or otherwise assisted the defendants in, proceedings in the United States in which the validity of the CSIRO's US Patent, is challenged.

PARTICULARS

(a)      The defendants in US proceedings in the Federal Court of the Eastern District of Texas 6:06-cv-549, 6:06-cv-550, 6:06-cv-551 and 6:07-cv-204, allege that CSIRO's US Patent is invalid and seek orders that the patent be revoked.

(b)      The privilege log in US proceeding CGC-07-461589 in the Superior Court of the State of California, County of San Francisco, indicates that on 2 May 2005, an email was sent to members of the Joint Defence Group in relation to that US proceeding.  Listed recipients to the Joint Defence Group email include three Cisco employees.

**Notification of breaches**

28      On 10 December 2007, CSIRO gave Radiata notification of the breaches of the TL Agreement (as amended) set out in paragraphs 9, 15-17, 23-25 and 26 above and requested that Radiata remedy the said breaches within 60 days from the date of receipt of notification.

L178205

12

**PARTICULARS**

Notice was given in writing to Radiata via a letter from CSIRO's solicitors dated 10 December 2007.

A copy of the letter is available for inspection at the offices of CSIRO's solicitors during business hours by prior appointment.

29    On 11 February 2008, CSIRO, Radiata and Cisco entered into an agreement on the terms of a standstill (Standstill).

**PARTICULARS**

The Standstill was in writing and was set out in a letter dated 11 February 2008 from CSIRO's solicitors to Radiata's and Cisco's US lawyers and accepted by Radiata's and Cisco's US lawyers.

A copy of the Standstill is available for inspection at the offices of CSIRO's solicitors during business hours by prior appointment.

30    On 25 September 2008, CSIRO, Radiata and Cisco entered into an agreement to vary the Standstill.

**PARTICULARS**

The agreement to vary the Standstill was in writing and was set out in a letter dated 25 September 2008 from CSIRO's solicitors to Radiata's and Cisco's US lawyers and accepted by Radiata's and Cisco's US lawyers.

31    On 24 October 2008, CSIRO gave Radiata and Cisco written notification of its intent to terminate the Standstill.

**PARTICULARS**

Notice was given in writing to each of Radiata and Cisco via a letter from CSIRO's solicitors dated 24 October 2008.

A copy of the letter is available for inspection at the offices of CSIRO's solicitors during business hours by prior appointment.

32    The Standstill was terminated on 31 October 2008.

33    On 31 October 2008, CSIRO gave Radiata further notification of the breaches of the TL Agreement (as amended) set out in paragraphs 9, 15-17, 23-25 and 26 above and, in accordance with the terms of the Standstill, requested that Radiata remedy the said breaches within 30 days from the date of receipt of notification.

13

34    On 31 October 2008, CSIRO gave Cisco notification of the breaches of the TL
      Agreement (as amended) set out in paragraphs 9, 15-17, 23-25, 26 and 27 above
      and, in accordance with the terms of the Standstill, requested that Cisco remedy the
      said breaches within 60 days from the date of receipt of notification.

### PARTICULARS

Notice was given in writing to Cisco via a letter from CSIRO dated 31 October 2008.

A copy of the letter is available for inspection at the offices of CSIRO's solicitors
during business hours by prior appointment.

35    Radiata and Cisco each failed to remedy any of the breaches of the TL Agreement
      (as amended) as set out in paragraphs 9, 15-17, 23-25, 26 and 27 above, the
      subject of the written notifications.

36    On or about 11 November 2008 CSIRO, Cisco and Radiata agreed to extend the
      deadlines for cure of the notified breaches of the TL Agreement (as amended)
      referred to at paragraphs 33 and 34 above to 31 December 2008.

37    Radiata and Cisco each failed to remedy any of the breaches of the TL Agreement
      (as amended) as set out in paragraphs 9, 15-17, 23-25, 26 and 27 above, the
      subject of the written notifications, by the expiry of the extended deadlines for cure
      of the notified breaches on 31 December 2008.

38    By reason of Radiata's and Cisco's failure to remedy any of the breaches within the
      agreed extended deadline for cure, CSIRO terminated the TL Agreement (as
      amended) on 2 January 2009 pursuant to clause 16.2.

39    By reason of Radiata's and Cisco's breaches of the TL Agreement (as amended) as
      set out in paragraphs 9-17, 21 and 23-27 above, CSIRO has suffered, and will
      continue to suffer, loss and damage.

40    By reason of Cisco's breach of the Second Amendment Agreement as set out in
      paragraphs 19, 20 and 21 above, CSIRO has suffered, and will continue to suffer,
      loss and damage.

### AND CSIRO SEEKS BY WAY OF RELIEF:

A.    A declaration that the TL Agreement (as amended) was validly terminated by
      CSIRO on 2 January 2009.

B.    Delivery up to CSIRO's solicitors of any improvements made by Radiata, Cisco or
      any sub-licensee to the Technology.

14

C.    Delivery up to CSIRO's solicitors of all CSIRO confidential information in the possession of Radiata, Cisco or any sub-licensee.

D.    An order that all sub-licences granted by Radiata or Cisco under the TL Agreement (as amended) be assigned forthwith to CSIRO.

E.    An order that all intellectual property rights in any Improvements to the Technology be assigned forthwith to CSIRO.

F.    An order that Radiata and Cisco execute all such documents as required to give effect to paragraphs D and E above.

G.    Damages for breach of the TL Agreement (as amended).

H.    Damages for breach of the Second Amendment Agreement.

I.    Any enquiry as to damages as may be necessary.

J.    Costs.

K.    Interest.

L.    Such further or other order as the Court deems appropriate.

**SIGNATURE OF LEGAL REPRESENTATIVE**

I certify that I am informed by my partner, Michael Pryse, and believe that there are reasonable grounds for believing on the basis of provable facts and a reasonably arguable view of the law that the claim for damages in these proceedings has reasonable prospects of success.

I have advised the plaintiff that court fees may be payable during these proceedings. These fees may include a hearing allocation fee.

Signature

Capacity                              Solicitor on record

Date of signature        7 January 2009

- 8 JAN 2009

**NOTICE TO DEFENDANT**

You will be in default if you do not file a defence within 28 days of being served with this statement of claim. The court may enter judgment against you without any further notice to you. The judgment may be for the relief claimed in the statement of claim and for the plaintiff's costs of bringing these proceedings. The court may provide third parties with details of any default judgment entered against you.

**HOW TO RESPOND**

**Please read this statement of claim very carefully. If you have any trouble understanding it or require assistance on how to respond to the claim you should get legal advice as soon as possible.**

You can respond in one of the following ways:

1     **If you intend to dispute the claim,** by filing a defence and/or making a cross-claim.

2     **If money is claimed, and you believe you owe the money claimed,** by:

- Paying the plaintiff all of the money and interest claimed. If you file a notice of payment under UCPR 6.17 further proceedings against you will be stayed unless the court otherwise orders.

- Filing an acknowledgement of the claim.

- Applying to the court for further time to pay the claim.

3     **If money is claimed, and you believe you owe part of the money claimed,** by:

- Paying the plaintiff that part of the money that is claimed.

- Filing a defence in relation to the part that you do not believe is owed.

You can get further information about what you need to do to respond to the claim from:

- The court registry.

- A legal practitioner.

- LawAccess NSW on 1300 888 529 or at www.lawaccess.nsw.gov.au.

Court forms are available on the UCPR website at www.lawlink.nsw.gov.au/ucpr or at any NSW court registry.

**REGISTRY ADDRESS**

Street address     Supreme Court of New South Wales

                            Law Courts Building, Queens Square

16

|  |  |
|---|---|
|  | 184 Phillip Street |
|  | Sydney NSW 2000 |
| Postal address | Supreme Court of New South Wales |
|  | GPO Box 3 |
|  | Sydney NSW 2001 |
| Telephone | (02) 9230 8111 |

17

**AFFIDAVIT VERIFYING**

Name          Terence John Healy

Address       351 Royal Parade Parkville, Vic, 3052

Occupation Solicitor

Date          6 January 2009


I Terence John Healy affirm as follows:

1        I am a solicitor and Special Counsel at CSIRO. I am authorized on behalf of CSIRO
         to make this affidavit.

2        Within CSIRO I, amongst others, have day to day responsibility for the matters the
         subject of this Statement of Claim. I make this affidavit from my own knowledge.

3        I believe that the allegations of fact in this Statement of Claim are true.

4        I solemnly declare and affirm that the signed
         to this affidavit is my signature and that ever
AFFIRMED at CANBERRA, ACT  Statement in the affidavit is true

Signature of deponent

Signature of witness

Name of witness

Address of witness

Capacity of witness                    Solicitor  Supreme Court of NSW

**FURTHER DETAILS ABOUT PLAINTIFF**

**Plaintiff**

| | |
|---|---|
| Name | Commonwealth Scientific and Industrial Research Organisation |
| Address | Limestone Avenue, Campbell, ACT 2612 |
| Frequent user identifier | |

**Legal representative for the Plaintiff**

| | |
|---|---|
| Name | Andrew Eastwood |
| Practising certificate number | 30294 |
| Firm | Freehills |
| Contact solicitor | Michael Pryse |
| Address | MLC Centre |
| | 19 Martin Place |
| | Sydney NSW 2000 |
| DX address | DX 361 |
| Telephone | +61 2 9225 5000 |
| Fax | +61 2 9322 4000 |
| Email | Michael.Pryse@freehills.com |
| Electronic service address | Michael.Pryse@freehills.com |

**DETAILS ABOUT DEFENDANTS**

**First defendant**

| | |
|---|---|
| Name | **Cisco Systems Wireless Networking (Australia) Pty Limited (formerly known as Radiata Communications Pty Ltd)** |
| Address | Level 9 |
| | 80 Pacific Highway |
| | North Sydney |
| | NSW 2060 |

**Second defendant**

| | |
|---|---|
| Name | **Cisco Systems Inc** |
| Address | 70 West Tasman Drive |
| | San Jose |

19

California 95134
United States of America



**Supreme Court**
of New South Wales

Law Courts Building, Queens Square
Level 5, 184 Phillip St, Sydney 2000
GPO Box 3, Sydney 2001
DX 829, Sydney

Telephone: (02) 9230 8111
Facsimile: (02) 9230 8628
TTY Phone: (02) 9230 8011

E-Mail: supreme_court@courts.nsw.gov.au
Website: www.lawlink.nsw.gov.au/sc

ABN: 77 057 165 500

Our Ref:   ES465
Telephone: 9230 8062
           9230 8603
08/01/2009

IN THE MATTER OF :

COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION

-v-

CISCO SYSTEMS WIRELESS NETWORKING (AUSTRALIA) PTY LIMITED (FORMERLY
KNOWN AS RAIATA COMMUNICATIONS PTY LTD)

FILE NUMBER:  020007/09

NOTICE OF STATUS CONFERENCE ON 07/05/2009 AT 09:00am

---

These proceedings have been entered in the General Case
Management List pursuant to practice Note SC CL 5.

It is expected that the parties' solicitors will have discussed
the case before the Directions Hearing and will have considered,
dealt with or addressed the matters referred to in paragraphs 22
and 25 of Practice Note SC CL 5. Your attention is also drawn to the
general requirements of that practice note.

Paragraph 27 of Practice Note SC CL 5 provides that, at any
Directions Hearing, the Court may consider whether the proceedings
are suitable for Alternative Dispute Resolution (ADR). In addition
to the matters mentioned in paragraph 22 of the Practice Note, it
is expected that the legal representatives will, prior to the
first Directions Hearing (and every subsequent Directions Hearing),
have discussed the possibility of ADR with their respective
clients, and will have instructions as to whether the client
agrees to a referral for ADR.

Each party not appearing in person must be represented at any
Status Conference by a barrister or solicitor familiar with the
proceedings and with instructions sufficient to enable all
appropriate orders and directions to be made.

For the PRINCIPAL REGISTRAR