1 JAMES M. WAGSTAFFE (95535)
wagstaffe@kerrwagstaffe.com
2 MICHAEL NG (237915)
mng@kerrwagstaffe.com
3 **KERR & WAGSTAFFE LLP**
4 100 Spear Street, Suite 1800
San Francisco, CA 94105–1528
5 Telephone: (415) 371-8500
Fax: (415) 371-0500
6

7 Attorneys for Defendant
COMMONWEALTH SCIENTIFIC AND
8 INDUSTRIAL RESEARCH
ORGANISATION
9

10

11

12 **UNITED STATES DISTRICT COURT**

13 **CENTRAL DISTRICT OF CALIFORNIA**

14 **SOUTHERN DIVISION**

15

| | |
|---|---|
| 16 CISCO-LINKSYS LLC, CISCO SYSTEMS, INC. AND CISCO SYSTEMS WIRELESS NETWORKING (AUSTRALIA) PTY, LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>COMMONWEALTH SCIENTIFIC AND INDUSTRIAL RESEARCH ORGANISATION,<br><br>Defendant. | Case No. SACV0900178-DOC(MLG)<br><br>**DECLARATION OF PROFESSOR JOHN CARTER IN SUPPORT OF DEFENDANT CSIRO'S MOTION TO DISMISS**<br><br>DATE: August 10, 2009<br>TIME:  8:30 a.m.<br>COURTROOM: 9D<br><br>TRIAL: [None]<br><br>**Hon. David O. Carter** |

I, John William Carter, declare:

1. I am a Professor of Commercial Law at the University of Sydney Law School in Australia, where I have been a member of the Faculty of Law since 1981. I specialize in Contract, Commercial Law and Restitution. I have personal knowledge of each of the facts set forth in this declaration, except where otherwise stated, and if called as a witness could and would testify competently thereto.

2. I graduated with a Bachelor of Arts in 1975 from the University of Sydney. In 1977, I graduated with a Bachelor of Laws (with Honours) from the University of Sydney Law School. In 1977, I was an Associate to the Hon. Mr. Justice Franki of the Federal Court of Australia. In 1978, I went to England as a W M Tapp Research Student at Gonville and Caius College, Cambridge. I graduated Doctor of Philosophy in 1981. In that same year, I joined the faculty at Sydney Law School.

3. Following promotions to senior lecturer and Associate Professor in 1986 and 1990 respectively, I was awarded a personal chair in the field of Commercial Law in 1995. Personal chair is a legal title conferred by a University denoting the highest academic rank. As a visiting scholar I have taught contract law in England and the United States. I have also presented conference papers in London, Cambridge, Oxford, Bristol, Auckland, Chicago, Atlanta, Toronto and Singapore.

4. In 1988, I established the *Journal of Contract Law*, of which I am the General Editor.

5. I have researched and written extensively in the areas of Contract Law, Commercial Law, and Restitution. My major works include: *Carter on Contract*, a two volume looseleaf service of over 2000 pages; *Breach of Contract*, based on my doctorial thesis and now in its second edition; *Contract Law in Australia*, a co-authored work now in its fifth edition; and *Restitution Law in Australia* (the first Australian work analyzing the subject of restitution), now in its

second edition, co-authored with Keith Mason, formerly President of the New South Wales Court of Appeal and Professor G J Tolhurst. Altogether, I have authored or co-authored more than 70 articles and books in these areas.

Jurisdiction In Australia

6. CSIRO was established under the Science and Industry Research Act 1949 (Cth). Under section 8 of that Act the CSIRO is a body corporate which may sue and be sued. CSIRO is amenable to process and subject to the jurisdiction of the Supreme Court of New South Wales as a body corporate established under the Science and Industry Research Act 1949 (Cth).

7. In Australia, as with most common law countries, corporations are subject to personal jurisdiction and may sue and be sued in their corporate capacity. I have reviewed the First Amended Complaint filed by plaintiffs in the above-captioned action, including paragraph 5 thereof, which states that plaintiff Cisco Australia (earlier identified as Cisco Systems Wireless Networking (Australia) Pty Limited) is an Australian corporation with its principal place of business in North Sydney, New South Wales. As an Australian corporation with its principal place of business in New South Wales, Cisco Australia may bring and maintain a suit in Australian courts, including the Supreme Court of New South Wales.

8. I have also reviewed paragraphs 3 and 4 of the complaint, which describe the status of Linksys (previously identified as Cisco-Linksys, LLC) and Cisco (previously identified as Cisco Systems, Inc.). That paragraph states that Cisco and Linksys are a California corporation and California limited liability company, respectively, with the principal place of business for each located in California. Foreign corporations (including limited liability companies like Linksys) can also sue and be sued in their corporate capacity in Australian courts.

9. I have reviewed the Statement of Claim in proceedings titled Commonwealth Scientific and Industrial Research Organisation v Cisco Systems

<u>Wireless Networking (Australia) Pty Ltd</u>, Supreme Court Proceedings 20007 of 2009, the original pleading in that action in the Supreme Court of New South Wales ("New South Wales Proceedings"). That pleading names both Cisco and Cisco Australia as defendants. Those documents indicate that Cisco and Cisco Australia have in fact been sued in the New South Wales Supreme Court. Jurisdiction of the Australian state Supreme Courts over a foreign corporation (again, including limited liability companies) exists when the corporation is also present in the jurisdiction; or the court has jurisdiction to permit service out of Australia under Schedule 6 of the Uniform Civil Procedure Rules 2005 (NSW) (<u>see</u> rule 11.2); or the corporation has submitted to the jurisdiction. I have also been informed that Cisco and Cisco Australia have unconditionally appeared in the Australian action. If so, then those parties have consented to the jurisdiction of the Supreme Court of New South Wales.

10. As defendants in that matter, Cisco and Cisco Australia are entitled to bring cross-claims against CSIRO in that case. Broadly expressed, they may assert any claim arising out of, or in connection with, the facts and matters raised, and claims made, by CSIRO. Having reviewed the pleadings in both cases, I believe that defendants in the New South Wales Proceedings would be entitled to assert all of the claims they have asserted in this action as defenses or cross-claims. I also believe that Linksys would be entitled to bring the claims it has asserted against CSIRO in this case in the New South Wales Proceedings.

11. Therefore, I believe that all claims asserted against CSIRO in this action could be asserted in the existing New South Wales Proceedings, or in a separate suit if they could not properly be raised in the New South Wales Proceedings.

<u>Availability of Declaratory Judgment Remedy</u>

12. Australian courts, including the Supreme Court of New South Wales, have the authority to issue declaratory judgments. <u>See</u> Supreme Court Act 1970

1  (NSW), section 75.  See also Uniform Civil Procedure Rules 2005 (NSW), rule
2  6.4.  Having reviewed the pleadings in this case, my conclusion is that the Supreme
3  Court of New South Wales would have jurisdiction to render declaratory judgment
4  of the nature sought in this case.

5  <u>Evidence Considered In Contract Cases Under New South Wales Law</u>

6  13.    I have been asked to provide an overview of how the contract claims
7  in this case would be analyzed under New South Wales law, specifically, the
8  relevant evidence a court would consider when undergoing an analysis of such
9  claims.

10  *First Stage: Context, or "Factual Matrix"*

11  14.    In the first stage, it is the duty of the court to place the contract in its
12  factual and legal context – variously termed the "surrounding circumstances,"
13  "background" or "factual matrix."  (See J. W. Carter, *Carter on Contract*,
14  LexisNexis Butterworths, Sydney, §§13-040ff.)  "Legal context" refers to the
15  general legal background, rather than precedent.  In the present case, this would
16  include matters such as the legislation establishing the CSIRO.

17  15.    In *Codelfa Construction Pty Ltd v State Rail Authority of New South*
18  *Wales* (1982) 149 CLR 337 at 348-9 per Mason J (with whom Stephen and
19  Wilson JJ agreed), 401 per Brennan J the High Court of Australia approved the
20  following statement by Lord Wilberforce (with whom the other members of the
21  House of Lords agreed) in *Prenn v Simmonds* [1971] 1 WLR 1381 at 1383–4;
22  [1971] 3 All ER 237 at 239–40:

> The time has long passed when agreements, even those under seal, were isolated from the matrix of facts in which they were set and interpreted purely on internal linguistic considerations. There is no need to appeal here to any modern, anti-literal, tendencies, for Lord Blackburn's well-known judgment in *River Wear Comrs v Adamson* (1877) 2 App Cas 743 at 763 provides ample warrant for a liberal approach. We must, as he said, enquire beyond the language and see what the circumstances were with reference to which the words were used, and the object, appearing from those circumstances, which the person using them had in view.

16. Relevant context will generally include "surrounding circumstances and the purpose and object of the transaction, and the market in which the parties were operating." *Pacific Carriers Ltd v BNP Paribas* (2004) 218 CLR 451 at 463; [2004] HCA 35 at [25] per the Full High Court. The relevant market in this context would be the Australian market in which the parties were operating when they entered the contract at issue, or at a minimum an international market viewed from the perspective of an Australian company seeking to do business there.

17. Although it is open to the parties to give evidence of context, such evidence is limited to material which would have been available to the parties at the time of contracting. The concern of the concept is with objective background necessary to place the contract in its commercial context. As a matter of law this may include material which "each might reasonably have expected the other to know." See *Youell v Bland Welch & Co Ltd* [1992] 2 Lloyd's Rep 127 at 133 per Staughton LJ. (Fox LJ agreed.)

*Second Stage: Interpretation*

18. In the second stage the court determines the meaning (and legal effect) of the words at issue. (See J W Carter, *Carter on Contract*, LexisNexis Butterworths, Sydney, §§12-001ff.) The whole contract must be considered.

19. As in all common law systems, the general principle of Australian law is that the meaning of a contract is determined objectively. A contract can have only one meaning and the words at issue must be interpreted in the sense in which

a reasonable person in the position of the person to whom the words are addressed would interpret them in light of the background.  See *Cook v Financial Insurance Co Ltd* [1998] 1 WLR 1765 at 1768 per Lord Lloyd (with whom Lords Steyn and Hope agreed); *Pacific Carriers Ltd v BNP Paribas* (2004) 218 CLR 451 at 462; [2004] HCA 35 at [22] per the Full High Court.  In the case of a bilateral contract between commercial parties, the effect of the principle is that the words at issue must be construed from the perspective of a reasonable person in the position of the parties.  Local nuances in meaning are accommodated by a general preference for local dictionaries (see *Provincial Insurance Australia Pty Ltd v Consolidated Wood Products Pty Ltd* (1991) 25 NSWLR 541 at 553 per Kirby P, 561 per Mahoney JA), and to the extent custom or usage might also be considered, the relevant custom and usage would be that of Australia. See J W Carter, *Carter on Contract*, LexisNexis Butterworths, Sydney, §12-050.

20.   In most cases it will be assumed that the parties intended the words at issue to be given their ordinary or natural meaning.  This refers to the meaning or meanings in use in the general community and the ordinary or natural syntactical sense of the words.  However, in appropriate cases words will be read in their technical or scientific sense, or in light of custom or usage.  Traditionally, such evidence has been admitted under exceptions to the parol evidence rule.  However, where a word obviously has a technical or scientific sense, evidence of the technical or scientific meaning is admissible.  See J. W. Carter, *Carter on Contract*, LexisNexis Butterworths, Sydney, §12-050.

21.   Although some controversy surrounds the exclusion of evidence of the parties' subsequent conduct, the prevailing view in Australia is that the evidence is not admissible as an aid to interpretation.  See *FAI Traders Insurance Co Ltd v Savoy Plaza Pty Ltd* [1993] 2 VR 343; *Sportsvision Australia Pty Ltd v Tallglen Pty Ltd* (1998) 44 NSWLR 103 at 116 per Bryson J. Contrast *Spunwill Pty Ltd v BAB Pty Ltd* (1994) 36 NSWLR 290.

*Third Stage: Application*

22.　In the third stage, the court applies the meaning (and legal effect) determined under the two previous stages to the facts of the case. The evidence is "at large," in the sense that the parol evidence rule does not operate.

23.　However, an inability to apply the contract arising, for example, from uncertainty or latent ambiguity, may require the court to revisit the second stage. If an exception to the parol evidence rule is applicable, it may take into account extrinsic evidence in order to resolve the difficulty. See, e.g., *Codelfa Construction Pty Ltd v State Rail Authority of New South Wales* (1982) 149 CLR 337 at 347; 41 ALR 367 per Mason J, with whom Stephen and Wilson JJ agreed; *Akot Pty Ltd v Rathmines Investments Pty Ltd* [1984] 1 Qd R 302.

24.　A common context for the use of extrinsic evidence in the application of a contract is where the subject matter is not fully defined or is capable of applying to more than one thing. The relevant and admissible extrinsic evidence will depend on the circumstances. It may amount to no more than a more extensive examination of context. In most cases, once extrinsic evidence is held to be admissible, the admissible evidence includes evidence of the prior negotiations of the parties, for example, in prior drafts of the contract. <u>See</u> *Bacchus Marsh Concentrated Milk Co Ltd v Joseph Nathan & Co Ltd* (1919) 26 CLR 410 at 427 per Isaacs J ("for the purpose of identifying the subject of the contract, prior negotiations are available just as any other circumstance would be") (approved *White v Australian and New Zealand Theatres Ltd* (1943) 67 CLR 266 at 271 per Latham CJ (with whom Rich J concurred).

25.　In summary, and having reviewed the pleadings and familiarized myself with the issues in this case, interpretation of the contract at issue here would require a court to review and analyze evidence pertaining to the factual matrix surrounding the formation of the contract, including both general evidence of the background environment in which the contract was entered into but also the

specific details concerning CSIRO, Cisco Systems Wireless Networking (Australia) Pty Limited (formerly known as Radiata Communications Pty Ltd) and the context of this particular agreement.

### Local Interest

26. I have also been asked to provide an opinion about the local interest of the New South Wales courts in the adjudication of this matter. Setting aside the courts' interests in adjudicating a controversy between an Australian government entity and an Australian entity, some of the legal issues implicated in this case currently exist, to varying degrees, in a state of flux under New South Wales and Australian law.

27. Those issues include legal issues surrounding good faith, estoppel, and termination. I am also familiar with the contract law of the United States and other common law countries, and aware that Australian law's treatment of those issues is in some critical regards distinct. The courts of New South Wales and the High Court of Australia have an interest in resolving those issues themselves, both to direct the development of Australian common law and also to ensure consistency in the body of governing law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 15th day of July, 2009, at Sydney, Australia.

_____
John William Carter